1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10    LEATRICE COX,

11              Plaintiff,                    No. CIV S-05-1384 GEB DAD

12         vs.

13    MICHAEL J. ASTRUE,                      FINDINGS AND RECOMMENDATIONS
      Commissioner of Social Security,
14
                Defendant.
15    _____/

16            This social security action was submitted to the court, without oral argument, for

17    ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18    judgment.  For the reasons explained below, the undersigned will recommend that plaintiff's

19    motion be granted, that defendant's motion be denied, that the decision of the Commissioner of

20    Social Security (Commissioner) be reversed and that this matter be remanded for further

21    proceedings consistent with these findings and recommendations.

22                            **PROCEDURAL BACKGROUND**

23            In 1995 plaintiff Leatrice Cox was awarded disability benefits.  (Transcript ("Tr.")

24    at 173.)  Those benefits were later terminated pursuant to the Drug Addiction and Alcoholism

25    ("DAA") provisions of the Social Security Act.  (Id.)  Plaintiff filed a subsequent application for

26    benefits in 1997.  (Id.)  On September 21, 2000, an Administrative Law Judge ("ALJ") found that

                                            1

1    plaintiff was not able to perform her past relevant work but was able to do other, sedentary work

2    and was therefore not disabled.  (Id. at 173, 190.)

3            On October 7, 2002, plaintiff applied for Supplemental Security Income (SSI)

4    benefits under Title XVI of the Social Security Act (the Act), alleging that she became disabled

5    on July 31, 2001, due to lupus, fibromyalgia, seizures, leg pain, back pain, arm pain and mental

6    problems.  (Id. at 44, 52-54.)  Plaintiff's application was denied initially on May 16, 2003, and

7    upon reconsideration on October 6, 2003.  (Id. at 36-37.)  An administrative hearing was held

8    before an ALJ on May 18, 2004.  (Id. at 226-52.)  Plaintiff was represented by counsel and

9    testified at the hearing.  In a decision issued on October 12, 2004, the ALJ found that plaintiff

10    was not disabled.  (Id. at 18-26.)  The ALJ entered the following findings:

11
        1.  The claimant has not engaged in substantial gainful activity
12         since the alleged onset of disability.

        2.  The claimant's chronic low back pain, fibromyalgia syndrome,
13         and borderline intellectual functioning, are considered "severe"
        based on the requirements in the Regulations 20 CFR §
14         416.920(b).

15         3.  These medically determinable impairments do not meet or
        medically equal one of the listed impairments in Appendix 1,
16         Subpart P, Regulation No. 4.

17         4.  The undersigned finds the claimant's allegations regarding her
        limitations are not totally credible for the reasons set forth in the
18         body of the decision.

19         5.  The claimant has the following residual functional capacity: lift
        20 pounds occasionally and 10 pounds frequently, walk/stand six
20         hours, sit six hours, occasionally perform postural activities, and
        mentally perform simple routine, repetitive work and some semi-
21         skilled work.

22         6.  The claimant's past relevant work as a child care provider did
        not require the performance of work-related activities precluded by
23         her residual functional capacity (20 CFR § 416.965).

24         7.  The claimant's medically determinable chronic low back pain,
        fibromyalgia syndrome, borderline intellectual functioning, and
25         mild disc degeneration and bulging at L4-5 and L5-S1 do not
        prevent the claimant from performing her past relevant work.

26  /////

1           8.  The claimant was not under a "disability" as defined in the
        Social Security Act, at any time through the date of the decision
2           (20 CFR § 416.920(f)).

3   (Id. at 25.)

4           On May 6, 2005, the Appeals Council denied plaintiff's request for review of the

5   ALJ's decision, thereby making it the final decision of the Commissioner.  (Id. at 7-9.)  Plaintiff

6   sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on

7   July 8, 2005.  (Doc. No. 1.)  By stipulated order filed January 30, 2006, the case was remanded

8   for further administrative proceedings.  (Doc. No. 17.)  On November 12, 2010 the court granted

9   defendant's motion to reopen this matter.  (Doc. No. 25.)

10                                     **LEGAL STANDARD**

11          The Commissioner's decision that a claimant is not disabled will be upheld if the

12  findings of fact are supported by substantial evidence in the record as a whole and the proper

13  legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

14  (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

15  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

16  conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

17  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

18  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

19  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

20  (1971)).

21          A reviewing court must consider the record as a whole, weighing both the

22  evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

23  F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

24  of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

25  substantial evidence supports the administrative findings, or if there is conflicting evidence

26  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

1  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

2  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

3  1335, 1338 (9th Cir. 1988).

4              In determining whether or not a claimant is disabled, the ALJ should apply the

5  five-step sequential evaluation process established under Title 20 of the Code of Federal

6  Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42

7  (1987).  This five-step process can be summarized as follows:

8              Step one:  Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
9            two.

10             Step two:  Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
11           appropriate.

12             Step three:  Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
13           404, Subpt. P, App. 1?  If so, the claimant is automatically
            determined disabled.  If not, proceed to step four.

14
            Step four:  Is the claimant capable of performing his or her past
15           work?  If so, the claimant is not disabled.  If not, proceed to step
            five.
16
            Step five:  Does the claimant have the residual functional capacity
17           to perform any other work?  If so, the claimant is not disabled.  If
            not, the claimant is disabled.
18

19  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

20             The claimant bears the burden of proof in the first four steps of the sequential

21  evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

22  sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

23  (9th Cir. 1999).

24                                      **APPLICATION**

25             Plaintiff argues that the ALJ committed the following four principal errors in

26  finding her not disabled: (1) the ALJ improperly ignored the res judicata effect of the September

4

21, 2000 finding that plaintiff could no longer perform her past relevant work; (2) the ALJ rejected third-party testimony regarding plaintiff's functional limitations without legitimate or germane reasons for so doing; (3) the ALJ rejected the opinion of plaintiff's treating physician without a legitimate basis for doing so; and (4) the ALJ failed to properly analyze plaintiff's past relevant work in determining if plaintiff was still capable of performing that work.  These arguments are addressed below, although not in the order presented by plaintiff.

**I.      Res Judicata**

Plaintiff argues that because another ALJ previously found on September 21, 2000, that plaintiff could no longer perform her past relevant work and was limited to sedentary work, under Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1998), "these findings were entitled to at least some res judicata effect and could only be revoked due to changed circumstances." (Compl. (Doc. No. 1) at 8.)  In this regard, plaintiff argues that in the October 12, 2004 decision the ALJ failed to cite any such changed circumstances and therefore erred in finding that plaintiff could perform light work and her past relevant work.  (Id. at 8-9.)

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." Chavez, 844 F.2d at 693.  See also Lyle v. Sec. Health & Human Serv., 700 F.2d 566, 568, n.2 (9th Cir. 1983).  Thus, prior determinations of residual functional capacity, education and work experience are entitled to res judicata absent new and material evidence on the issue.  Chavez, 844 F.2d at 694.  "Adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." Social Security Ruling ("SSR") 97-4(9).

Here, the administrative record establishes that in 2004 the ALJ did in fact rely on new and material evidence in determining that plaintiff could perform light work and her past

1 relevant work.  Indeed, nearly all of the evidence reviewed and relied on by the ALJ in the

2 October 12, 2004 decision was generated well after the prior ALJ's September 21, 2000 decision.

3 See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) ("The entirety of the

4 medical evaluations presented with respect to the present application were conducted after

5 Stubbs-Danielson's 1984 initial disability determination.  These evaluations necessarily

6 presented new and material information not presented to the first ALJ.").

7 　　　　Specifically, in his October 12, 2004 decision the ALJ relied on the April 29,

8 2003 opinion of Dr. Satish Sharma, which the ALJ found "was the most reliable in establishing

9 [plaintiff's] residual functional capacity."  (Tr. at 24.)  Dr. Sharma had examined plaintiff and

10 concluded that:

11 
12 　　　　Based upon today's physical examination and observations, the
　　　　patient should be limited in lifting to 10 pounds frequently, 20
　　　　pounds occasionally.  Bending and stooping should be done
　　　　occasionally.  Standing and walking should be limited to 6 hours
13 　　　　per day with normal breaks.  There are no limitations in holding,
　　　　fingering or feeling objects.  There are no limitations in speech,
14 　　　　hearing or vision.

15 (Id. at 118.)

16 　　　　The ALJ in 2004 also relied on the September 29, 2003 opinion of Dr. Barry

17 Finkel who examined plaintiff and noted that she "appears to walk, sit, and stand easily."  Id. at

18 20, 155.  In this regard, Dr. Finkel stated, "I would say there is a marked incongruity between her

19 presentation and the description of chronic pain and reported paucity of daily activities."  (Id. at

20 155.)  As for plaintiff's mental abilities, Dr. Finkel found that plaintiff could follow through on

21 simple tasks.  (Id.)

22 　　　　Based, in part, on these opinions the ALJ found in his 2004 decision that:

23 　　　　claimant retains the following residual functional capacity: lift 20
　　　　pounds occasionally and 10 pounds frequently, walk/stand six
24 　　　　hours, sit six hours, occasionally perform postural activities, and
　　　　mentally perform simple routine, repetitive work and some semi-
25 　　　　skilled work.

26 (Id. at 24.)

1    The April 29, 2003 opinion of Dr. Sharma and the September 29, 2003 opinion of

2  Dr. Finkel constituted new and material evidence on the issue of plaintiff's residual functional

3  capacity and whether plaintiff could perform her past relevant work.  Accordingly, the earlier

4  September 21, 2000 determination that plaintiff could no longer perform her past relevant work

5  was not entitled to res judicata effect in 2004.  Therefore, plaintiff is not entitled to summary

6  judgment in her favor on this ground.

7  **II.     Third Party Statements**

8    The testimony of lay witnesses, including family members and friends, reflecting

9  their own observations of how the claimant's impairments affect her activities must be

10  considered and discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

11  2006); Smolen v. Chater, 80 F.3d at 1273, 1288 (9th Cir. 1996); Sprague, 812 F.2d at 1232.

12  Persons who see the claimant on a daily basis are competent to testify as to their observations.

13  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v.

14  Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the ALJ chooses to reject or discount the

15  testimony of a lay witness, he or she must give reasons germane to each particular witness in

16  doing so.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.  The mere fact that a lay

17  witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony.

18  Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.  Nor does the fact that medical records

19  do not corroborate the testimony provide a proper basis for rejecting such testimony.  Smolen, 80

20  F.3d at 1289.  It is especially important for the ALJ to consider lay witness testimony from third

21  parties where a claimant alleges symptoms not supported by medical evidence in the file and the

22  third parties have knowledge of the claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR

23  88-13.

24    Questions of credibility and the resolution of conflicts in the testimony are usually

25  deemed functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  The determination of

26  credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  Saelee, 94

F.3d at 522.  As a general rule, an ALJ's assessment of credibility should be given great weight.

Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques of credibility

evaluation may be employed, and the adjudicator may take into account prior inconsistent

statements or a lack of candor by the witness.  Fair, 885 F.2d at 604 n.5.

Here, plaintiff asserts that the ALJ failed to comment on the testimony of her

daughter, Staci Verdun, who testified that plaintiff suffers a great deal of pain, is incapable of

standing long enough to finish washing dishes or cook and spends approximately eighty percent

of her day lying down.  (Tr. at 250-51.)  Plaintiff's assertion is incorrect.  The ALJ did in fact

discuss the testimony of plaintiff's daughter and, after a comprehensive review of the available

medical evidence, concluded that the daughter's testimony was "not fully supported," specifically

in light of the opinions offered by Dr. Sharma, Dr. Finkel, Dr. Cheema and the September 29,

2003 Residual Functional Capacity Assessment of Dr. Thein Nguyen.  (Id. at 24.)  The court

finds that the ALJ gave a germane reason for discounting the testimony of Staci Verdun.

However, plaintiff also argues that the ALJ failed to discuss the lay witness

statement of Stefanie Oneil, plaintiff's niece.  In a Function Report-Adult-Third Party statement

dated September 1, 2003, Ms. Oneil provided reports about plaintiff's abilities and limitations.

(Id. at 86-94.)  Ms. Oneil indicated that she has known plaintiff all of her life and that she spends

five to ten hours a week helping plaintiff do paperwork and shop for groceries, and generally

assisting plaintiff.  (Id. at 86.)  Ms. Oneil states that "everybody in our family helps" plaintiff by

cooking, cleaning, and providing her transportation.  (Id. at 87.)  She also stated that plaintiff

sometimes has difficulty getting dressed, bathing, caring for her hair, feeding herself and using

the toilet.  (Id.)  Moreover, Ms. Oneil  indicated that plaintiff cannot do house or yard work

because of the pain in her joints and muscles.  (Id. at 89.)  According to Ms. Oneil, plaintiff is in

constant pain that limits her ability to lift, bend, stand, reach, sit, kneel and concentrate and

sometimes requires the use of a cane, walker, brace, or wheel chair.  (Id. at 92-93.)  Ms. Oneil's

statement, which was based on her own observations regarding plaintiff's impairments,

characterizes plaintiff as suffering from significant pain that renders plaintiff nearly unable to function physically and is consistent with the plaintiff's own testimony and the testimony of Ms. Verdun of plaintiff being seriously limited in her ability to function physically due to her overwhelmingly pain.

It is undisputed that the ALJ failed to discuss Ms. Oneil's statement in rendering his decision.  "[T]he ALJ is required to account for **all** lay witness testimony in the discussion of his or her findings."  Robbins, 466 F.3d at 885 (emphasis added).  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).  As a result of the ALJ's failure to account for Ms. Oneil's statement, and because that testimony was consistent with the findings of treating physician Dr. Dubey (discussed below) and the other testimony presented by plaintiff, the court cannot confidently conclude that no reasonable ALJ would have reached a different disability determination when fully crediting Ms. Oneil's statement.  Stout, 454 F.3d at 1055-56 (court could not conclude that "an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work was harmless"); see also Robbins, 466 F.3d at 885 ("[W]e have only found harmless error when it was clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination,'" and "had never found harmless an 'ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work.'") (citing Stout, 454 F.3d at 1055-56); Gordon v. Astrue, No. 2:10-CV-1198 GGH, 2011 WL 3740832, at *8 (E.D. Cal. Aug. 24, 2011) (finding the ALJ's failure to address third-party statements was not harmless error where the statements corroborated plaintiff's testimony and complaints); Steele v. Astrue, No. CIV S-10-794 JFM (TEMP), 2011 WL 2709273, at *2 (E.D. Cal. July 12, 2011) (finding the ALJ's failure to consider third party statements could not be found harmless); Fonseca v. Astrue, No. EDCV 10-00470-MAN, 2011

WL 2412627, at *3 (C.D. Cal. June 10, 2011) ("Ms. Munoz's testimony both corroborates and expands upon plaintiff's testimony, and thus, contrary to defendant's contention, the ALJ's failure to address Ms. Munoz's testimony cannot be dismissed as harmless error."); Conley v. Astrue, No. 1:10-cv-00336 SKO, 2011 WL 1806968, at *10 (E.D. Cal. May 10, 2011) (finding the ALJ's failure to discuss third party testimony pertaining to plaintiff's ability to work was not harmless error).

For these reasons, the final decision of the Commissioner should be reversed on this ground.

## III.    ALJ's Characterization of Medical Evidence and Treatment of Medical Opinions

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. The ALJ, however, need not give weight to a treating physician's conclusory opinion supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830.  An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31.  Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original).

Here, plaintiff contends that the ALJ did not have a legitimate basis for rejecting the opinion of plaintiff's treating physician, Dr. Archana Dubey.  Specifically, plaintiff argues that the ALJ improperly rejected Dr. Dubey's August 11, 2003 opinion that because of the symptoms caused by plaintiff's Fibromyalgia and Systemic Lupus Erthematosus ("SLE"), plaintiff was precluded from "performing any full-time work at any exertional level, including sedentary." (Tr. at 120-21.)  According to Dr. Dubey, plaintiff was unable to lift 10 pounds or more, could not engage in pushing or pulling, must lie down or elevate her legs between four and four and a half hours during an eight-hour period, could only sit for one hour at a time without rest or support, could only sit for two hours during an eight-hour day, could only stand and/or walk for one hour at a time without rest or support, and could only stand and/or walk for an hour and a half over an eight-hour period.  (Id. at 121.)

The ALJ rejected Dr. Dubey's August 11, 2003 opinion, stating:

> The medical evidence documents the claimant sought emergency room (ER) treatment March 26, 2003 for left arm and shoulder pain and on April 3, 2003 for left shoulder pain and left hand numbness and was treated both times with pain medications (Exhibit C-1F).

> Dr. Satish Sharma performed an internal medicine consultative evaluation (CE) on April 29, 2003 for reported low back pain, generalized body aches, joint pain, increased fatigue, recurrent

headaches, problems with memory and concentration, insomnia, migraine headaches, history of seizures, episodes of transient ischemia attacks and fibromyalgia.  The examinations, physical and neurological, were normal, except for tenderness of the neck and back, pain on forward flexion at 70 degrees of the back, and tender points over both trapezii, forearms, knees, and thighs.  Impressions were complaints of generalized body aches, joint pain, increased fatigue, recurrent headaches, and insomnia and also chronic low back pain, history of migraine headaches, seizures and episodes of difficulty speaking.  The functional assessment indicated she could perform light work (Exhibit C-2F).

Records from the UCD Medical Center document that claimant was treated from February 19, 1999 through August 11, 2003 for migraine headaches, fibromyalgia, multiple joint pain, possible SLE, hepatitis C, and degenerative disc disease of the lumbar spine.  Examinations revealed only slight tenderness of the right knee and left shoulder tenderness.  An MRI scan of the brain was within normal limits.  Chart notes document June 20, 2003 she was abusing narcotic drugs, July 25, 2003 her ANA was positive and was referred to rheumatology to rule out SLE, and a questionnaire completed August 11, 2003 indicated the claimant had fibromyalgia and SLE and was limited to less than a full range of sedentary work (Exhibit C-3F).

The undersigned rejects the functional limitations of August 11, 2003 as UCD examinations did not document clinical findings or diagnostic findings to support those limitations; those records contain no evidence of any courses of physical therapy, trigger point injections or other pain injections; and do not contain evidence of trigger points consistent with fibromyalgia, or clinical findings consistent with SLE.  Moreover, it is inconsistent with the CE by Dr. Sharma whose functional assessment indicated she could perform light work (Exhibit C-2F); Dr. Finkle during his psychological CE noted that she sat, stood and moved easily (Exhibit C-4F, p 2); it is not supported by the State Agency (SA) determination (Exhibit C-5F); and Dr. Cheema's evaluation led him to conclude that given the absence of key findings on review of systems he did not feel very strongly she had lupus, and there was no evidence clinically of systemic lupus.  (Exhibit C-8F).

Dr. Barry Finkel (Ph.D.) performed a psychological CE with testing in September 2003 which revealed a verbal IQ of 76, performance IQ of 75 and full scale IQ of 74.  Dr. Finkle indicated "she put forth marginally adequate effort on test tasks and results may underestimate actual functioning somewhat."  Trials A and B results were indicative of mild visual-motor impairment, Bender designs showed no indicators of organic impairment, and Rey Memory Test suggested suboptimal effort.  The mental status examination (MSE) was normal, except for a report that she was probably depressed and [sic] no interests outside of playing with

12

her grandchildren.  There was no Axis I diagnosis and for Axis II borderline intellectual functioning.  GAF was rated at 65. Functionally, Dr. Finkel indicated she could follow simple instructions, follow thorough on simple tasks without direct supervision, be able to interact appropriately with others including supervisors and peers, attention and pace were mildly impaired, concentration was moderately impaired, ability to work over an eight-hour day and attend to a regular work schedule was mildly to moderately impaired, and she was competent to manage funds (Exhibit C-4F).

The SA determined in September 2003 that physically she could perform a modified range of light work (Exhibit C-5F), and in October 2003 that mentally she could perform simple and some detailed job instructions (Exhibits C-6F-7F).

Dr. Gurtel Cheema performed a rheumatologic consultation in January 2004 for reported chronic pain, lupus, transient ischemic attacks, and generalized fatigue, aches and pains.  The examination was normal, except for generalized tenderness, a few tender spots in the upper and lower back, right lateral epicondyle and right greater trochanter, and some degree of hypermobility of the knees. ANA scree was positive at 1:160 with a homogeous pattern. Assessment was that the claimant had a long history of chronic pain treated with medications with some improvement; that despite having a positive ANA there was no evidence clinically of systemic lupus; having a positive ANA could be the result of chronic hepatitis C infection, but it still remains to be seen if she actually has any active hepatitis or not; and given the absence of key findings on review of systems he did not feel very strongly that she had lupus (Exhibit C-8F).

The medical evidence indicates that the claimant has chronic low back pain, fibromyalgia syndrome, and borderline intellectual functioning, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  Specifically, the medical evidence fails to document evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitations of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imagining, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imagining, manifested by chronic

13

1    nonradicular pain and weakness, and resulting in an inability [sic]
     ambulate effectively, as defined by 1.00B2b per Section 1.04.  As
2    will be discussed more fully below, her mental impairment is not
     of listing severity per Section 12.05.
3

4    (Id. at 20-21.)

5          According to the administrative record before the court, when Dr. Dubey rendered

6    her opinion on August 11, 2003, it appears that she had treated plaintiff on only a few limited

7    occasions.  In this regard, Dr. Dubey saw plaintiff on July 25, 2003, for a medication refill.  (Id.

8    at 131.)  At that time Dr. Dubey noted that plaintiff "had no continuity of care."  (Id.)  Dr. Dubey

9    next saw plaintiff on August 11, 2003 to "get forms for SSI filled out" and for another refill of

10   medication.  (Id. at 129.)  This appears to be the complete extent of Dr. Dubey's treatment of

11   plaintiff and is consistent with Dr. Dubey's indication in her August 11, 2003 opinion that

12   plaintiff's primary care physician was in fact Dr. Broddrick, not Dr. Dubey.  (Id. at 121.)

13   Nonetheless, the court will consider Dr. Dubey's opinion as that of a treating physician.

14         Dr. Dubey's August 11, 2003 opinion consists of a two-page questionnaire, in

15   which she indicates that plaintiff has fibromyalgia based on a history of widespread pain and pain

16   in at least 11 of 18 tender points on digital palpation, and an abnormal ANA.  (Id. at 120.)

17   According to Dr. Dubey, plaintiff's primary impairments are fibromyalgia and SLE.  Dr. Dubey

18   based her brief opinion on the objective findings that plaintiff had "LP shoulder tenderness," and

19   "RP knee tenderness to tibial tuberosity."  (Id. at 121.)  Dr. Dubey indicated that even these

20   findings are "per Dr. Broddrick-PCP."  (Id.)

21         Attached to Dr. Dubey's opinion are approximately thirty pages of plaintiff's

22   medical records.  Those records consist primarily of treatment notes from plaintiff's office visits

23   with various physicians reflecting plaintiff's frequent complaints of pain and requests for

24   medication refills.  As for abnormal objective clinical findings, plaintiff's medical records reflect

25   that on April 9, 2003, she had a low white blood cell count, a high sed rate, a positive ANA

26   screen, an ANA titer of 1:140 and an ANA pattern of speckled.  (Id. at 127.)  On July 25, 2003,

14

1    plaintiff's levels of potassium, carbon dioxide and urea nitrogen were low, while the results of

2    her lipid panel were high.  (Id. at 130.)  Plaintiff also had a low white blood cell count and a

3    positive ANA screen, with a 1:160 ANA titer and a homogenous ANA pattern.  (Id. at 122, 130.)

4             Apparently based on these medical records, Dr. Broddrick's findings and Dr.

5    Dubey's few, limited visits with plaintiff, Dr. Dubey concluded that plaintiff's medical problems

6    precluded her from performing any full-time work at any exertional level, including the sedentary

7    level.  (Id. at 121.)

8             Dr. Dubey's opinion is, however, contradicted in several respects by the findings

9    of three examining physicians.  Specifically, on April 29, 2003, prior to the date Dr. Dubey

10   rendered her opinion, plaintiff was examined by Dr. Satish Sharma, a specialist in internal

11   medicine.  (Id. at 113-18.)  Dr. Sharma administered a physical examination, that consisted of

12   specific examinations of plaintiff's head, eyes, ears, nose, throat, skin, neck, lungs, chest,

13   abdomen, back, upper extremities, lower extremities, peripheral pulses, and an evaluation of

14   plaintiff's neurologic condition.  Dr. Sharma noted that plaintiff had "good tone bilaterally with

15   good active motion" and "[s]trength is 5/5 in all muscle groups tested in the upper and lower

16   extremities."  (Id. at 117.)  As to plaintiff's gait, Dr. Sharma observed that plaintiff "walks with a

17   normal gait and does not use any assistive device to ambulate."  (Id.)  With respect to plaintiff's

18   functional capacity assessment, Dr. Sharma concluded:

19              Based upon today's physical examination and observations, the
                patient should be limited in lifting to 10 pounds frequently, 20
20              pounds occasionally.  Bending and stooping should be done
                occasionally.  Standing and walking should be limited to 6 hours
21              per day with normal breaks.  There are no limitations in holding,
                fingering or feeling objects.  There are no limitations in speech,
22              hearing or vision.

23   (Id. at 118.)

24             On September 23, 2003, plaintiff was examined by Dr. Barry Finkel.  (Id. at 152-

25   56.)  Dr. Finkel noted that plaintiff's:

26   /////

1 | 2

> Gait and general psychomotor activity are within normal limits.
> She sits, stands and moves easily.  There are no nonverbal
> indicators of pain.

3 (Id. at 153.)  In summarizing his findings, Dr. Finkel stated:

4 | 5

> She appears to walk, sit, and stand easily.  I would say there is a
> marked incongruity between her presentation and the description of
> chronic pain and reported paucity of daily activities.

6 (Id. at 155.)

7 On January 15, 2004, plaintiff was examined by Dr. Gurtel Cheema, an assistant

8 professor in the Division of Rheumatology, pursuant to a Rheumatologic consultation ordered by

9 Dr. Broddrick.  (Id. at 205-08.)  Dr. Cheema reviewed plaintiff's medical history, including prior

10 diagnostic testing, and administered a thorough physical examination of plaintiff, similar to the

11 physical examination conducted by Dr. Sharma.  Dr. Cheema also reviewed plaintiff's prior lab

12 results, including her positive ANA screens from April 2003 and July 2003.  Dr. Cheema

13 characterized the April 2003 positive ANA screen result as "barely positive."  (Id. at 207.)  Based

14 on his examination, Dr. Cheema concluded that:

15 | 16 | 17 | 18 | 19

> Despite having a positive ANA there is no evidence clinically
> today that Leatrice has systemic lupus.  However, her having a
> positive ANA could be a result of her chronic hepatitis C infection
> as well.  It still remains to be seen if she actually has any active
> hepatitis or not.  Given the absence of the key findings on her
> review of systems I do not feel very strongly that she would have
> lupus anyway based on the information which is available to us so
> far.

20 (Id. at 207.)

21 Moreover, on September 29, 2003, Dr. Thien Nguyen, a non-examining agency

22 physician, opined in a Physical Residual Functional Capacity Assessment form that, based on a

23 review of the available evidence, plaintiff was able to lift ten pounds occasionally, seven to nine

24 pounds frequently, stand and/or walk for at least two hours in an eight-hour workday, sit about

25 eight hours in an eight-hour work day, was unlimited in her ability to push and/or pull, and had

26 no postural, manipulative, visual, communicative or environmental limitations.  (Id. at 157-61.)

16

1       As noted above, a treating physician's opinion that is controverted by another

2   doctor may be rejected only for specific and legitimate reasons supported by substantial evidence

3   in the record.  Lester, 81 F.3d at 830-31.  The ALJ, however, need not give weight to a treating

4   physician's conclusory opinion supported by minimal clinical findings.  Meanel, 172 F.3d at

5   1113-14 (affirming rejection of a treating physician's "meager opinion" as conclusory,

6   unsubstantiated by relevant medical documentation, and providing no basis for finding the

7   claimant disabled); see also Magallanes, 881 F.2d at 751.  Morever, if a treating professional's

8   opinion is contradicted by an examining professional's opinion that is supported by different,

9   independent clinical findings, the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

10  1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  "Independent clinical findings

11  can be either (1) diagnoses that differ from those offered by another physician and that are

12  supported by substantial evidence or (2) findings based on objective medical tests that the

13  treating physician has not herself considered."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)

14  (citations omitted).

15      Here, the August 11, 2003 opinion of one of plaintiff's treating physician, Dr.

16  Dubey, is arguably a conclusory opinion supported by minimal clinical findings.  Dr. Dubey

17  asserts that plaintiff is unable to perform any full-time work at any exertional level due to her

18  fibromyalgia and SLE.  However, the only objective findings offered by Dr. Dubey in support of

19  her opinion are that plaintiff suffers from shoulder and knee tenderness and had an abnormal

20  ANA.  Even here, Dr. Dubey stated that her opinion is, to some degree, based upon findings "per

21  Dr. Broddrick," plaintiff's primary care physician.  (Tr. at 121.)

22      Morever, Dr. Dubey's opinion is contradicted by the opinion of at least two

23  examining physicians whose opinions are supported by different, independent clinical findings.

24  In this regard, Dr. Sharma's April 29, 2003 opinion concluded that plaintiff has the functional

25  capacity to perform light work.  That finding was based on an exhaustive physical examination of

26  the plaintiff.  There is no record that Dr. Dubey administered or considered such a physical

17

1   examination in reaching her opinion with respect to plaintiff's physical limitations.  Moreover,

2   Dr. Cheema's January 15, 2004 opinion contradicts Dr. Dubey's opinion that plaintiff suffers

3   from SLE.  Dr. Cheema, who specializes in Rheumatology, reviewed plaintiff's medical records,

4   including plaintiff's abnormal ANA results, and concluded that there was no evidence that

5   plaintiff had SLE.  Dr. Cheema's opinion was based, in part, on "the absence of the key findings"

6   during plaintiff's review of systems.  (Id. at 207.)  The court notes that the July 25, 2003 and

7   August 11, 2003 form used to record Dr. Dubey's treatment notes includes a section entitled

8   "Review of Systems."  (Id. at 129, 131.)  However, Dr. Dubey provided no notations in this area

9   on either form.

10          The Ninth Circuit "has recognized fibromyalgia as a physical rather than a mental

11  disease."  Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 873 (9th Cir.

12  2004) (citing Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc., 125

13  F.3d 794, 796, 799 (9th Cir. 1997)).  "Common symptoms . . . include chronic pain throughout

14  the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can

15  exacerbate the cycle of pain and fatigue associated with this disease."  Benecke v. Barnhart, 379

16  F.3d 587, 589-90 (9th Cir. 2004).  As the court has explained,

17              [f]ibromyalgia's cause is unknown, there is no cure, and it is
                poorly-understood within much of the medical community.  The
18              disease is diagnosed entirely on the basis of patients' reports of
                pain and other symptoms.  The American College of
19              Rheumatology issued a set of agreed-upon diagnostic criteria in
                1990, but to date there are no laboratory tests to confirm the
20              diagnosis.

21  Benecke, 379 F.3d at 590 (citing Jordan, 370 F.3d at 872, and Brosnahan v. Barnhart, 336 F.3d

22  671, 672 n.1 (8th Cir. 2003)).  It is true that here, plaintiff's treatment notes are replete with her

23  complaints of pain and other common symptoms of fibromyalgia.

24          Nonetheless, on this record, the court is unable to find that the ALJ improperly

25  characterized the medical evidence of record and it appears that substantial evidence supports the

26  ALJ's stated reasons for discounting Dr. Dubey's opinion.  It must be kept in mind that the

court's scope of review of decisions granting or denying Social Security disability is limited.

<u>Hall v. Sec'y of Health, Educ. & Welfare</u>, 602 F.2d 1372, 1374 (9th Cir. 1979) (observing that

Congress has mandated a very limited scope of judicial review of the Commissioner's decisions

granting or denying Social Security disability benefits).  The court must consider the record as a

whole, taking into account both the evidence that supports and the evidence that detracts from the

Commissioner's decision; it is not the court's role to re-weigh the evidence or substitute its own

judgment for the Commissioner's.  <u>Winans v. Bowen</u>, 853 F.2d 643, 644-45 (9th Cir. 1987).

Moreover, if there is conflicting evidence supporting a finding of either disability or

nondisability, the ALJ may resolve the conflict so long as there is "more than one rational

interpretation of the evidence."  <u>Sprague</u>, 812 F.2d at 1230.  <u>See also</u> <u>Matney on Behalf of</u>

<u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing

court must resolve conflicts in the evidence, and if the evidence can support either outcome, the

court may not substitute its judgment for that of the ALJ.").

　　　　　In this instance, the court finds conflicting evidence and more than one rational

interpretation of the evidence.  The court cannot substitute its own judgment for that of the

ALJ's.  Therefore, plaintiff is not entitled to summary judgment on this ground.[1]

### IV.    Past Relevant Work

　　　　　Plaintiff argues that the ALJ erred because he "did not prove that [plaintiff] could

perform her past relevant work as a Child Care Provider." (Compl. (Doc. No. 1) at 9.)  In this

regard, plaintiff contends that the ALJ failed to develop the factual record with respect to this

issue because the ALJ "did not articulate the specific functional requirements of the past work . .

. . [and] did not ask any questions at the hearing to clarify the functional requirements of the past

---

[1]  The court has already found that the decision of the Commissioner should be reversed
because the ALJ failed to consider the third party statement of Stefanie Oneil.  Ms. Oneil's
statement is consistent with other testimony presented by plaintiff and the opinion of Dr. Dubey
with respect to plaintiff's complaints of pain and her limited ability to function physically.  In
this regard, the ALJ may be required to reconsider his treatment of Dr. Dubey's opinion in light
of the required consideration of Ms. Oneil's third-party statement.

1   work." (Id.)  Plaintiff argues that because of the ALJ's error the court has nothing to review

2   regarding the functional requirements of a Child Care Provider to determine whether substantial

3   evidence supports the Commissioner's decision that plaintiff's impairments do not prevent her

4   from doing her past relevant work.  (Id.)

5          At step four of the sequential evaluation, the ALJ must determine whether the

6   claimant retains the residual functional capacity to perform her past relevant work or any other

7   work that exists in the national economy.  A claimant's RFC is the most that she can still do

8   despite her limitations and is an assessment based on all the relevant evidence in the record.  20

9   C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1); Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir.

10  2001).  It is the duty of the ALJ, not the claimant's physicians, to determine RFC at the

11  administrative hearing stage.  20 C.F.R. §§ 404.1546(c) & 416.946(c); Vertigan v. Halter, 260

12  F.3d 1044, 1049 (9th Cir. 2001).  If the claimant is capable of performing past work, she is not

13  disabled.

14         Here, the court notes that plaintiff testified at the administrative hearing that she

15  was currently providing child care for one young child.  (Tr. at 241.)  Moreover, the ALJ

16  determined that plaintiff has the RFC to lift 20 pounds occasionally and 10 pounds frequently, to

17  walk, stand or sit for six hours, to occasionally perform postural activities, and to mentally

18  perform simple routine, repetitive work and some semi-skilled work.  (Id. at 24.)  The ALJ

19  determined that, given plaintiff's residual functional capacity she could perform her past relevant

20  work as it was previously performed by her.  (Id.)

21         In support of his decision, the ALJ cited the May 16, 2003 findings of the State

22  Agency evaluation.  There, the agency identified plaintiff's RFC as sedentary and determined that

23  with that RFC plaintiff was able to perform her past relevant work as a Child Care Provider.  (Id.

24  at 75.)  Under the Commissioner's regulations, the physical exertion requirements for sedentary

25  work are as follows:

26  /////

20

> Sedentary work involves lifting no more than 10 pounds at a time
> and occasionally lifting or carrying articles like docket files,
> ledgers, and small tools.  Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties.  Jobs are
> sedentary if walking and standing are required occasionally and
> other sedentary criteria are met.

20 C.F.R. § 416.967(a).  "'Occasionally' means occurring from very little up to one-third of the

time."  SSR 83-10, 1983 WL 31251, at *5 (Nov. 30, 1982).  For purposes of sedentary work,

"periods of standing or walking should generally total no more than about 2 hours of an 8-hour

workday, and sitting would generally total approximately 6 hours of an 8-hour workday."  Id.

According to plaintiff, in 2001 she worked as a Child Care Provider providing

child care for four children.  (Tr. at 230.)  Plaintiff worked eight hours a day, five days a week.

(Id. at 64.)  Plaintiff was required to frequently lift 10 pounds, and perform some combination of

walking, standing, sitting, reaching and handling small objects.  (Id.)  Plaintiff also had to carry

food, books and clothes.  (Id.)  Plaintiff's RFC as determined by the ALJ exceeded both the

physical exertion requirements for sedentary work, which according to the State Agency was

consistent with the RFC required for the job of Child Care Provider, and plaintiff's description of

the physical exertion requirements of the job of Child Care Provider as performed by her.

As noted above, the claimant bears the burden of proof as to whether she is

capable of performing her past work.  Yuckert, 482 U.S. at 146 n.5.  Here, the ALJ considered all

relevant evidence in the record and reasonably found that plaintiff has the RFC to perform work

as a child care provider.  See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (requiring the

ALJ to make "specific findings as to the claimant's residual functional capacity, the physical and

mental demands of the past relevant work, and the relation of the residual functional capacity to

the past work"); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (finding the claimant's

own testimony about past work highly probative); Villa v. Heckler, 797 F.2d 794, 797-98 (9th

Cir. 1986) (holding that the ALJ "must ascertain the demands of the claimant's former work and

then compare the demands with his present capacity").  The court finds that the ALJ's

1  determination regarding plaintiff's RFC is supported by substantial evidence, and plaintiff has

2  not demonstrated that she is unable to perform work as a Child Care Provider.  See Drouin v.

3  Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); see also Smith v. Barnhart, 388 F.3d 251, 253

4  (7th Cir. 2004) ("The issue is not whether the applicant for benefits can return to the precise job

5  he held . . . but whether he can return to a 'job' he held that exists at other employers."); Evans v.

6  Shalala, 21 F.3d 832, 834 (8th Cir. 1994) (a finding of not disabled is appropriate where "the

7  claimant could have performed his past relevant work as it is usually performed in the national

8  economy"); SSR 82-61 ("[A]n applicant who 'cannot perform the excessive functional demands

9  and/or job duties actually required in the former job but can perform the functional demands and

10 job duties as generally required by employers throughout the economy should not be found to be

11 disabled.")

12       Because the ALJ did not err in this determination, plaintiff is not entitled to

13 summary judgment on this ground.[2]

14                        **CONCLUSION**

15       The decision whether to remand a case for additional evidence or to simply award

16 benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

17 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  In this regard, the Ninth Circuit has

18 stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would

19 be served by further administrative proceedings, or where the record has been thoroughly

20 developed."  Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs.,

21 859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting

22 disability claims.  Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41

23 F.3d at 1304; Varney, 859 F.2d at 1401.

24

25       [2] Again, because the court has found that the decision of the Commissioner should be reversed because the ALJ failed to consider the third party statement of Stefanie Oneil the ALJ may be required to reconsider his analysis of plaintiff's RFC and whether plaintiff is capable of

26 performing her past relevant work.

1    "Remand for further administrative proceedings is appropriate if enhancement of

2    the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  See also

3    Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).  Here, the undersigned has concluded that

4    the ALJ erred only in failing to address the third party witness statement of Stefanie Oneil.

5    Under such circumstances, remand for further administrative proceedings is appropriate.  See

6    Steele v. Astrue, No. CIV S-10-794 JFM (TEMP), 2011 WL 2709273 at *2-3 (E.D. Cal. July 12,

7    2011); Bear v. Astrue, No. SACV 10-1866 JC, 2011 WL 2600713 at *6-7 (C.D. Cal. June 30,

8    2011); Green v. Astrue, No. 1:10-cv-00935-AWI-SKO, 2011 WL 2313655 at *11 (E.D. Cal.

9    June 9, 2011); Burk v. Astrue, No. 1:09-cv-00350-JLT, 2010 WL 2650700 at *9 (E.D. Cal. July

10   1, 2010).  Thus, the matter should be remanded for the purpose of allowing the ALJ to consider

11   that third-party statement and to determine whether, if that statement is credited, additional

12   limitations not previously considered are applicable in assessing plaintiff's RFC.  See Vasquez v.

13   Astrue, 572 F.3d 586, 593 (9th Cir. 2009).

14         Accordingly, IT IS HEREBY RECOMMENDED that:

15         1.  Plaintiff's January 10, 2011 motion for summary judgment (Doc. No. 35) be

16   granted as set forth in this order;

17         2.  Defendant's January 27, 2011 cross-motion for summary judgment (Doc. No.

18   36) be denied;

19         3.  The decision of the Commissioner of Social Security be reversed; and

20         4.  This case be remanded for further proceedings consistent with this order.

21         These findings and recommendations will be submitted to the United States

22   District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

23   fourteen (14) days after these findings and recommendations are filed, any party may file written

24   objections with the court.  A document containing objections should be titled "Objections to

25   Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed

26   within seven days after the objections are filed.  The parties are advised that failure to file

1   objections within the specified time may, under certain circumstances, waive the right to appeal

2   the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: September 9, 2011.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:6
    Ddad1/orders.socsec/cox1384.f&r

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26